**SO ORDERED: March 16, 2009.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: )<br>ATA Airlines, Inc., )<br>        Debtor. )<br>_____) )<br>San Antonio Aerospace, L.P., )<br>        Plaintiff, )<br>  )<br>v. )<br>  )<br>ATA Airlines, Inc., Wells Fargo Bank )<br>Northwest, N.A., not in its individual capacity, )<br>but solely as Owner Trustee with respect to )<br>Aircraft N517AT, N701TZ, N702TZ, N705TZ, )<br>and N706TZ, International Lease Finance )<br>Corporation, Wilmington Trust Company, not in )<br>its individual capacity but solely as Owner Trustee )<br>with respect to Aircraft N518AT, N519AT, )<br>N520AT and N522AT, and Wells Fargo Bank )<br>Northwest, N.A., not in its individual capacity but )<br>solely as Owner Trustee with Respect to Aircraft )<br>N522TZ, N560TZ and N561TZ )<br>        Defendants. ) | Case No. 08-03675-BHL-11<br><br><br><br><br><br><br>Adv. No. 08-50226 |

## JUDGMENT

This matter is before the Court on each of Defendants' **Limited Motions for Summary Judgment**, all filed on August 18, 2008. Each motion specifically addressed the issue of which law

governs the creation, perfection, and enforcement of the purported liens claimed by the Plaintiff. The Plaintiff, San Antonio Aerospace, L.P. ("SAA") filed **San Antonio Aerospace, L.P.'s Response in Opposition to Owner Trustees' Motions for Summary Judgment**. Reply briefs in support of the motions for summary judgment were filed on October 10, 2008. On December 19, 2008, the Court heard oral arguments on all of the pending summary judgment motions, at which time it took the issue under advisement.

## **Finding of Facts**

1. ATA Airlines, Inc. ("ATA") is a corporation organized under the laws of the State of Indiana. While operational, ATA was both a low-cost carrier providing passenger service and a charter operation that provided charter service to the United States military. Though headquartered in Indianapolis, ATA maintained offices in several cities around the United States.

2. SAA operates an airframe maintenance facility in San Antonio, Texas. San Antonio Aerospace is a subsidiary company of Singapore Technologies Engineering, Ltd., located in Singapore.

3. While operational, ATA leased its aircraft from various companies, including the Defendants. The interests of the Defendants in these aircraft are as follows:

|  | Owner | Trustee/Lessor | FAA Tail No. ID |
|---|---|---|---|
| 1. | ILFC | ILFC | N314TZ |
| 2. | ILFC | ILFC | N315TZ |
| 3. | ILFC | ILFC | N317TZ |
| 4. | V10A Investors, LLC | Wells Fargo | N517AT |
| 5. | Boeing Capital Corp. | Wells Fargo | N552TZ |
| 6. | Boeing Capital Corp. | Wells Fargo | N560TZ |
| 7. | Boeing Capital Corp. | Wells Fargo | N561TZ |
| 8. | VX Capital Partners | Wells Fargo | N701TZ |
| 9. | VX Capital Partners | Wells Fargo | N702TZ |
| 10. | VX Capital Partners | Wells Fargo | N705TZ |
| 11. | VX Capital Partners | Wells Fargo | N706TZ |
| 12. | Jet-I Leasing, LLC | Wilmington Trust | N518AT |
| 13. | Jet-I Leasing, LLC | Wilmington Trust | N519AT |
| 14. | Jet-I Leasing, LLC | Wilmington Trust | N 520AT |
| 15. | Jet-I Leasing, LLC | Wilmington Trust | N522AT |

(collectively, the "Aircraft")

4. In September of 2005, ATA and SAA began negotiating an agreement whereby SAA would provide maintenance services to ATA's Aircraft. In December of 2005, an agreement in principle was reached and, after further negotiation, a draft of a maintenance agreement was submitted by SAA to a firm retained by ATA to assist in the negotiation of this matter. This draft provided that the maintenance agreement was to be governed by Indiana law.

5. At the request of SAA, the choice of law provision in the final maintenance agreement reflected the parties desire that New York law would govern the maintenance agreement. The final maintenance agreement (the "Maintenance Agreement") was signed by both parties on or about January 27, 2006. The Maintenance Agreement contained the following relevant provisions:

**Section 7:  Remuneration and Settlement of Accounts**

7.2      ... Payment for 50% of the invoice shall be made before Aircraft redelivery. The remaining 50% will be made fifteen (15) days after redelivery to ATA,
...

**Section 16:  Lien Rights**

The period of credit allowed for payment by ATA for Work performed hereunder in Section 7 pertaining to REMUNERATION & SETTLEMENT OF ACCOUNTS shall not constitute a waiver by SAA of any lien rights accruing to SAA in relation to any ATA Equipment on which Work has been performed hereunder, and shall not in any manner affect, prejudice or diminish such lien rights irrespective of whether or not such Equipment has been released or removed from SAA's custody and control.

**Section 20:  Governing Law**

This Agreement shall be governed by the laws of the State of New York without reference to conflict of laws principles.

6. Pursuant to the Maintenance Agreement, SAA performed various work on the Aircraft. With the exception of aircraft N314TZ and N317TZ, all of the maintenance work was performed at SAA's facility in San Antonio, Texas. Maintenance on aircraft N314TZ and N317TZ was conducted at the facility of Panama Aerospace Engineering ("PAE"), an entity related to SAA, in Panama City, Panama. After the maintenance work was completed, the Aircraft were returned to ATA. As of the petition date, ATA had not paid for at least a portion of the maintenance work performed by SAA.

4

7. On April 2, 2008, ATA filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. It immediately rejected the leases on all its aircraft and returned them to the various owners.

8. On April 4, 2008, SAA filed its lien notices on the Aircraft with the Federal Aviation Administration. At the time of filing, SAA was not in possession of any of the Aircraft.

9. On April 11, 2008, it initiated the present adversary proceeding by filing its complaint seeking to establish the validity, extent, and priority of its maintenance liens. On August 18, 2008, the Defendants each filed limited motions for summary judgment on a sole issue: whether New York law governs the creation, perfection, and enforcement of the purported liens claimed by the SAA against the Defendants, their property, and the proceeds thereof, thereby defeating SAA's lien claims pursuant to Texas lien statutes and the Federal Aviation Act.

## Discussion

The Defendants argue that the choice-of-law provision in the Maintenance Agreement should prevail and thus New York law should govern. SAA, on the other hand, asserts that Texas law should control under the authority of the Federal Aviation Act. Because determination of this single issue dictates the validity of SAA's lien, the Defendants have moved for summary judgment on this point of law.

Section 184 of New York Lien Law, which applies to non-possessory liens, states:

> A person keeping a garage, hangar or place for the storage, maintenance, keeping or repair of ... aircraft as defined by article fourteen of the general business law, and who in connection therewith tows, stores, maintains, keeps or repairs any ... aircraft or furnishes gasoline or other supples therefor at the request or with the consent of the owner ... has a lien upon such motor vehicle, motor boat or aircraft for the sum due for such towing, storing, maintaining, keeping or repairing of such motor vehicle, motor boat or aircraft or for furnishing gasoline or other supplies therefor and may detain such motor vehicle, motor boat or aircraft at any time it may be

5

> lawfully in his possession until such sum is paid, *except that if the lienor, subsequent to thirty days from the accrual of such lien, allows the aircraft out of his actual possession the lien provided for in this section shall thereupon become void as against all security interests, whether or not perfected, in such motor vehicles, motor boat or aircraft and executed prior to the accrual of such lien*, notwithstanding possession of such motor vehicle, motor boat or aircraft is thereafter acquired by such lienor (emphasis added).

Because SAA did not have possession of the Aircraft, application of New York law would prohibit SAA from asserting a lien on the Aircraft.

SAA notes that the Federal Aviation Act contains a preemptive choice-of-law provision that states, in relevant part:

> (c) Applicable laws.–(1) The validity of a conveyance, lease, or instrument that may be recorded under section 44107 of this title is subject to the laws of the State, the District of Columbia, or the territory or possession of the United States at which the conveyance, lease, or instrument is delivered, regardless of the place at which the subject of the conveyance, lease, or instrument is located or delivered. If the conveyance, lease, or instrument specifies the place at which delivery is intended, it is presumed that the conveyance, lease, or instrument was delivered at the specified place.

49 U.S.C. §44108.

Since the majority of the work was completed in Texas, and the liens were filed with the FAA as required by Texas law, SAA contends that Texas law should control the creation, perfection, and enforcement of the liens. Under Texas law, possession by the lien holder is not required and does not affect the validity of a mechanic's lien. *V.T.C.A., Property Code* § 70.302.

### Standard of Review

Summary judgment is mandated where there are no disputed issues of material fact and the movant must prevail as a matter of law. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994). The moving party bears the initial burden of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party presents a *prima facie* showing that he is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings but must affirmatively show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*, 477 U.S. at 323; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When reviewing facts in support of a motion for summary judgment, a court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-American, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). The court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but rather to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249.

## Conclusions of Law

A. Presumption of Validity of a Contractual Choice of Law Provision.

As a general rule, a federal court sitting in diversity will look to the forum state's choice-of-law rules to determine the applicable substantive law. *Fulcrum Financial Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000). However, the jurisdiction of a bankruptcy court arises not from diversity but from federal bankruptcy law. *In re Jafari*, 385 B.R. 262, 266 (W.D.Wis., 2008). Nevertheless, it makes little difference whether this court should apply the federal common law or Indiana choice-of-law principles inasmuch as either law endorses contractual choice-of-law provisions.

7

In *M/S Bremen v. Zapata Off-Shore Co.*, the United States Supreme Court held that choice-of-law provisions should be honored by courts when, "made in an arm's-length negotiation by experienced and sophisticated businessman, and absent some compelling and countervailing reason..." 407 U.S. 1, 12 (1972). Moreover, the Seventh Circuit Court of Appeals has stated that "[a]n express choice-of-law provision will be given effect in the absence of 'exceptional circumstances showing a purpose to commit a fraud on the law.'" *Kolentus v. Avco Corp.*, 798 F.2d 949, 955 (7th Cir., 1986) (quoting *Paulausky v. Polish Roman Catholic Union of America*, 39 N.E.2d 440, 447 (1942)).

Both Indiana and the Federal common law follow the Restatement (Second) of Conflict of Laws. *Eli Lilly Do Brasil, Ltda. v. Federal Express Corp.*, 502 F.3d 78, 81 (2nd Cir., 2007) ("[W]hen conducting a federal common law choice-of-law analysis, absent guidance from Congress, we may consult the Restatement (Second) of Conflict of Laws."); *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 583 (7th Cir., 1994) ("[T]he choice-of-law approach adopted by the state of Indiana has been that of the Restatement (Second) of Conflict of Laws."). The applicable section of the Restatement reads as follows:

> §187. Law of the State Chosen By The Parties.
>
> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice, or
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the

> rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by parties.

The requirements of Restatement § 187(1) are met here. The parties explicitly provided for the application of New York law in the Maintenance Agreement. In fact, this provision was placed in the Maintenance Agreement at the request of SAA, the party who now seeks to avoid its enforcement. Had it been SAA's intent to exempt mechanic's liens from New York, that provision certainly could have been explicitly provided for in the Maintenance Agreement. It was not. However, as the choice-of-law provision does not specifically address mechanic's liens, a review of Restatement § 187(2) is also appropriate.

Here, the requirements of Restatement § 187(2) are met as well. Though, at a glance, it seems as though New York has no substantial relationship to the parties or to the transaction, the Official Comments to Restatement § 187 provide some guidance:

> The parties to a multistate contract may have a reasonable basis for choosing a state with which the contract has no substantial relationship. For example, when contracting in countries whose legal systems are strange to them as well as relatively immature, the parties should be able to choose a law on the ground that they know it well and that it is sufficiently developed. For only in this way can they be sure of knowing accurately the extent of their rights and duties under the contract.

*Restatement (Second) of Conflict of Laws*, § 187, Comment f. SAA requested that New York law apply to the Maintenance Agreement for exactly the reasons contemplated in Comment f. Brian Hunt, Senior Vice President and General Counsel of ATA, who was primarily responsible for the negotiation of the legal aspects of the Maintenance Agreement, stated:

> The change from Indiana law to New York law was made by persons at SAA's parent company in Singapore. SAA advised ATA's negotiating team that SAA had routinely dealt with agreements governed by New York law, that New York law was more familiar to SAA, and that SAA understood it to be more fully developed in terms of its coverage of and case law dealing with commercial transactions.

*Hunt Aff.*, ¶ 9. In essence, it appears that SAA chose New York law for the exact reasons contemplated by the Restatement comment. Additionally, the difference in statutory lien rights between Texas law and New York law is not a valid policy reason to prevent the enforcement of an otherwise valid choice-of-law provision. Comment G to the Restatement of Conflict of Laws § 187 states that "[t]he forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." Hence, the Court finds that the requirements of Restatement of Conflict of Laws § 187(1) and (2) are met.

### B. The Federal Aviation Act Does Not Preempt a Valid Choice-of-Law Clause.

SAA maintains that the Federal Aviation Act, supra, preempts all other law respecting choice-of-law. In support of its argument, SAA points to *In re Holiday Airlines Corp.*, a Ninth Circuit Court of Appeals decision whose facts closely resemble the facts in this case. 620 F.2d 731 (9th Cir., 1980). In that case, a trustee in bankruptcy brought an action to determine the validity of several artisans' liens asserted by an aircraft repair company. The repair company was a Washington corporation and completed the subject work in Washington before shipping the repaired equipment to the airline company in California. Relying on the Washington lien statute, the aircraft repair company filed the notice of its liens with the FAA. The trustee, in turn, argued that California law should apply to this action because the aircraft were located in California at the time the bankruptcy proceedings commenced, and that the applicable lien law should be the forum state, California. *Id.* at 732-34. The Court held that the Federal Aviation Act choice-of-law provision preempted state law choice-of-law provisions.

10

What distinguishes the present case from *Holiday Airlines* is simply that in the Ninth Circuit case, there was no contracted choice-of-law provision in any agreement between the parties. Although *Holiday Airlines* may well stand for the proposition that the Federal Aviation Act preempts state law choice-of-law provisions, it does not hold that the Federal Aviation Act preempts a choice-of-law clause in a contract.

C.  The Choice-of-Law Clause is Controlling on the Issue of Statutory Lien Right.

Finally, SAA argues that the choice-of-law clause of the Maintenance Agreement was inserted to govern the contract itself, but not the parties' lien rights. To illustrate this point, SAA reads Section 16 of the Maintenance Agreement, in conjunction with Section 7.2, as manifesting the parties' intent to recognize non-possessory lien rights. But, SAA asserts, since New York law does not acknowledge non-possessory lien rights then the parties must not have intended New York law to govern such lien rights.

A more careful reading of Sections 16 and 7.2, however, may lead to the opposite conclusion. Application of Texas law would render these provisions meaningless. Texas law gives the lien holder until the 180th day after the date of the performance of the last repair or maintenance to file the lien with the Federal Aviation Agency. *V.T.C.A., Property Code* § 70.303. A provision allowing for lien rights for fifteen days after the date of repair, therefore, would be of no import.

When dealing with state lien laws such as New York, however, Section 7.2 and Section 16 become meaningful. Though SAA would lose their lien rights upon releasing the aircraft under New York law, they would maintain a contractual action against ATA under Section 7.2. It is precisely when read in conjunction with New York lien law that Sections 7.2 and 16 take on meaning. Therefore, the Court does not find SAA's argument to be persuasive in this regard.

11

Based on the foregoing, the Court finds that the choice-of-law provision in the Maintenance Agreement shall apply to the governance of statutory lien rights. Under the law of the state of New York, therefore, SAA does not have valid mechanics' liens on the subject Aircraft. Accordingly, the Court finds that the Defendants' **Limited Motions for Summary Judgment** should be, and hereby are, **GRANTED**. The Court will schedule a status conference to determine the issues remaining before the Court.

### 

Distributions to all parties.